IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROBERT WAYNE McINNIS,

        Plaintiff,

v.                                                       Civ. No. 03-045 JH/RLP

JAMES ROCHE, Secretary of the
Department of the Air Force,

        Defendant.

## MEMORANDUM OPINION AND ORDER

      This matter comes before the Court on Defendant's *Motion for Summary Judgment* [Doc. No. 33], filed March 3, 2005. In the brief supporting the motion, Defendant requests that the Court grant summary judgment in his favor on Plaintiff's claims for constructive discharge and retaliation.[1] Plaintiff, who is *pro se*, has not responded to Defendant's motion. After considering the facts and the applicable law, the Court finds that the motion should be granted in part and denied in part.

## LEGAL STANDARD

      Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party. *Id.* However, the Court is not required to evaluate every conceivable inference which can be drawn from evidentiary matter, but only reasonable ones. *Lucas v. Dover Corp.*, 857

---

[1] Defendant's motion does not address Plaintiff's claim for race discrimination.

F. 2d 1397, 1401 (10th Cir. 1988). In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id*. Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question. *Walker v. NationsBank of Florida*, 53 F.3d 1548, 1555 (11th Cir. 1995).

As a result of Plaintiff's failure to file a response within the time specified by the local rule, he has waived the right to file a response and confessed all facts asserted and properly supported in the summary judgment motion. *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199-1200 (10th Cir. 2002). However, Plaintiff's waiver does not relieve this Court of its duty to make the specific determinations required by Fed. R. Civ. P. 56(c). *Id. See also Reed v. Bennett*, 312 F.3d 1190 (10th Cir. 2002). Accordingly, the Court will determine whether Defendant has met his "initial responsibility" of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law.

## FACTS

The material facts of this case, as supported by the affidavits, deposition testimony, and other evidence on file, are as follows.

Plaintiff Robert McInnis ("McInnis"), who is African-American, is a former federal employee who began working for the Civil Service in 1979. In approximately 1990, McInnis was employed as a plumbing worker for the 377th Civil Engineering Squadron at Kirtland Air Force Base in Albuquerque, New Mexico. He worked in this position until July 14, 1998. At the time McInnis left his employment, Rudy Simek was his immediate supervisor, and James Fejer was his third level supervisor. Both Simek and Fejer are white. Simek called McInnis names that were racially and

sexually derogative. Although these working conditions were troubling, McInnis found them to be tolerable prior to July 10, 1998.

McInnis also claims that, prior to 1996, on many occasions he drank alcohol with Simek and others. Sometime in 1996, McInnis quit drinking and threatened to expose his supervisors' acts of discrimination and on-the-job alcohol abuse to the Air Force. McInnis alleges that the events that followed in June and July of 1998 were in retaliation against him for his whistleblowing.

On June 3, 1998, Defendant issued a Notice of Proposed Removal to McInnis. In that document, the Defendant accused him of insubordination when he refused to work overtime on March 16 and 17, 1998. McInnis responded to the Notice of Proposed Removal, but on Friday, July 10, 1998, Defendant issued a "Notice of Decision to Remove" McInnis from his position. That same day, McInnis signed and initialed a document titled "Last Chance Settlement Agreement." (Defendant's Ex. 4). In that agreement, McInnis admitted that he had engaged in the insubordinate conduct described in the Notice of Removal and that his conduct justified his removal from federal service. McInnis also agreed to certain future conduct with regard to his employment. In return, the Defendant agreed not to remove him from his position and placed him on what essentially amounts to a two-year probation period. McInnis testified at his deposition that the Last Chance Settlement Agreement in and of itself did not make his work conditions intolerable.

July 11-12, 1998 was a weekend, and McInnis did not work on those days. Plaintiff did work on July 13-14, which he described at "terrific days" or "great days" at work. McInnis testified that on the morning of July 13, Simek called him into his office and laughed, telling McInnis, "We got you now." McInnis had a similar conversation with Johnny Jacobs on July 14. McInnis resigned from his position on July 14, 1998, because he felt that the accusations leveled at him in the agreement

3

were untrue, because he believed that his work conditions were going to become worse, and because he believed that the Last Chance Settlement Agreement gave his supervisors free reign to do anything to him that they wanted (even though it did not expressly state that). None of his supervisors urged McInnis to quit.

On July 29, 1998, McInnis filed an appeal of both the June 3, 1998 Notice of Decision to Remove and the July 10, 1998 Las Chance Settlement Agreement with the Merit Systems Protection Board ("MSPB"). There is no evidence in the record of what happened at the MSPB. Then, on October 26, 1998, McInnis contacted an EEO counselor at Kirtland Air Force Base. On December 8, 1998, he filed a formal Complaint of Discrimination with Kirtland's EEO office, alleging that he suffered discrimination on the basis of his race and sexual orientation.

After conducting an investigation of McInnis' Complaint, the Defendant dismissed it for untimeliness. McInnis appealed to the Office of Federal Operations ("OFO"), which modified the dismissal of the EEO Complaint. The OFO dismissed his claim of discrimination based on sexual orientation, but found that the Complaint was timely and remanded it for processing. On July 23, 2001, Defendant issued a Final Agency Decision finding no discrimination against McInnis. Plaintiff appealed the decision, but the OFO affirmed.

On January 10, 2003, McInnis filed this action, alleging claims for race discrimination, sexual orientation discrimination, and retaliation against the Secretary of the Air Force as well as Simek, Fejer, and Johnny Jacobs. Given a liberal reading, his complaint may also be interpreted to assert a claim for constructive discharge. On May 25, 2004, the parties agreed to dismiss the claims against the individual defendants as well as Plaintiff's claim for sexual orientation discrimination, leaving only his claims against the government for race discrimination, retaliation, and constructive discharge.

4

## DISCUSSION

**I.    CONSTRUCTIVE DISCHARGE**

To establish a constructive discharge, McInnis must show that the Defendant "'made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.'" *See Sandoval v. City of Boulder*, 388 F.3d 1312, 1325 (10th Cir. 2004) (quoting *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 534 (10th Cir. 1998)). "Essentially, a plaintiff must show that she had no other choice but to quit. The conditions of employment must be objectively intolerable; the plaintiff's subjective views of the situation are irrelevant." *Sanchez*, 164 F.3d at 534. "If an employee resigns of [his] own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged." *Jeffries v. State of Kan.*, 147 F.3d 1220, 1233 (10th Cir.1998).

Further, to establish constructive discharge a "Plaintiff must show that, at the time of his resignation, his employer did not allow him the opportunity to make a free choice regarding his employment relationship." *Exum v. United States Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004). "When examining a constructive discharge claim, we disregard both the employee's subjective view of the workplace environment and the employer's subjective intentions regarding the employee." *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005).

The undisputed facts as presented on the motion for summary judgment do not rise to the level of constructive discharge. The undisputed evidence is that Plaintiff's working conditions, though difficult, were tolerable before July 10, 1998. On that date, he signed the Last Chance Settlement Agreement, a document which he admits did not render his working conditions intolerable. Similar, nothing occurred on July 13 or July 14 to worsen his situation. Rather, McInnis has testified

that he believed that his supervisors planned to use the Last Chance Settlement Agreement against him in an effort to make his life miserable, and he quit in anticipation of those actions. However, Plaintiff's subjective belief cannot serve as the basis of his claim for constructive discharge. Defendant's motion for summary judgment will be granted.

## II.   RETALIATION

Defendant argues that he is entitled to summary judgment on McInnis' claim for retaliation because he failed to properly exhaust his administrative remedies for that claim. The Court agrees to the extent that McInnis is asserting a claim for retaliation for protected EEO activity under Title VII.

An aggrieved federal employee must exhaust his administrative remedies under Title VII before filing a civil action in federal district court. Exhaustion serves the purpose of placing the agency on notice of an alleged violation and giving it "an opportunity to conciliate the claim in furtherance of Title VII's goal of securing voluntary compliance." *Woodman v. Runyon*, 132 F.3d 1330, 1342 (10th Cir. 1997).

In this case, McInnis did consult an EEO counselor and eventually filed a written EEO complaint. However, it is undisputed that he did not raise the issue of retaliation for prior protected activity at any point during his administrative process. Therefore, McInnis has failed to exhaust his administrative remedies. Having reached this conclusion, there is no need for the Court to address the claim on its merits. Defendant is entitled to summary judgment on his claim for retaliation under Title VII.

However, it appears from his Complaint that Plaintiff may also be asserting a claim under the federal Whistleblower Protection Act ("WPA"), 5 U.S.C. § 2301 et seq.—that is, a claim that he

suffered retaliation for reporting on-the-job drinking by his supervisors. To establish a prima facie case for whistleblowing under the WPA, Plaintiff must show by a preponderance of the evidence that (1) he made a protected disclosure, (2) he was subjected to an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action. *Wells v. Shalala,* 228 F.3d 1137, 1147 (10th Cir. 2000). *See also Willis v. Department of Agriculture*, 141 F.3d 1139, 1143 (Fed. Cir. 1998); *see also Trimmer v. Department of Labor*, 174 F.3d 1098, 1101-02 (10th Cir.1999) (under the whistleblower provisions of the Energy Reorganization Act, an employee must establish that protected activity was a "contributing factor" in an unfavorable personnel decision). Further, there may be state laws applicable to Plaintiff's whistleblowing claim.

Unfortunately, the parties have not informed the Court as to whether McInnis is asserting a claim under the WPA or under state law, nor has Defendant argued that it is entitled to summary judgment on such claims. Therefore, the Court will not address such claims here.

IT IS THEREFORE ORDERED that:

(1)   Defendant's *Motion for Summary Judgment* [Doc. No. 33] is GRANTED with regard to Plaintiff's claim for constructive discharge;

(2)   Defendant's *Motion for Summary Judgment* [Doc. No. 33] is GRANTED with regard to Plaintiff's claim for retaliation in violation of Title VII;

(3)   Defendant's *Motion for Summary Judgment* [Doc. No. 33] is DENIED to the extent that Plaintiff is asserting a claim for retaliation under the federal Whistleblower Protection Act or any applicable state law; and

(4)     Plaintiff's claim for race discrimination is unaffected by this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE